# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CC-01554-SCT

*LANDMARK STRUCTURES, INC.*

*v.*

*THE CITY COUNCIL FOR THE CITY OF MERIDIAN, THE CITY OF MERIDIAN AND CALDWELL TANKS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/12/2001 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN F. HAWKINS |
| | JOHN L. MAXEY, II |
| ATTORNEYS FOR APPELLEES: | WILLIAM C. HAMMACK |
| | RONNIE L. WALTON |
| | WALKER (BILL) JONES |
| | HEATHER L. SAUM |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED-9/19/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/10/2002 |

**EN BANC.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Landmark Structures, Inc. filed a bill of exceptions to appeal the City of Meridian's decision to award a public construction contract to Caldwell Tanks, Inc. The Lauderdale County Circuit Court affirmed the city council's decision. Landmark contests the contract award alleging that Caldwell materially deviated from the bid specifications by using four feet forms instead of the designated six to twelve feet forms and, therefore, the city council's award was arbitrary and capricious and not supported by substantial evidence. Landmark also contends that since Caldwell did not comply with the bid specifications, it was a nonresponsive bidder, leaving Landmark as the lowest responsive bidder.

¶2. Upon review of the record, we find that Landmark submitted no evidence to show that Caldwell's bid effected a material change in time, price or work or that Landmark and the other bidders were put at an unfair economic disadvantage. Therefore, the city council was not arbitrary or capricious in its decision to

award the contract to Caldwell, and we affirm the circuit court.

## FACTS

¶3. The City of Meridian solicited sealed bids for the construction of a one million gallon elevated water tank, the North Meridian Elevated Water Tank, pursuant to Miss. Code Ann. § 31-7-13 (Supp. 2002). The City employed Malcolm-Pirnie, Inc. as the project engineer who prepared bid specifications.

¶4. A project manual, which included the bid specifications, was distributed to prospective bidders. The manual's instructions note that the "[owner] reserves the right to reject any or all Bids . . . [and] to waive any informality not involving price, time or changes in the Work." Further, the contract was to be awarded "to the lowest responsive and responsible Bidder who has neither been disqualified nor rejected . . . ." The manual also states that the "concrete and formwork requirements . . . shall be strictly enforced to ensure concrete of the highest practicable structural and architectural standards." It specifies that prefabricated form segments shall be used and that the "[c]oncrete pour height shall be a minimum of 6 ft. and a maximum of 12 ft."

¶5. Four sealed bids were submitted including Caldwell's at $1,261,000 and Landmark's at $1,310,000. The other two bids were higher. After the bids were opened, the project engineer noted that Caldwell proposed to use composite tanks that had been constructed in 1996 and 1997 while the project specified tanks constructed five years or more prior to the bidding. He also noted that Caldwell proposed to use four feet forms instead of six to twelve feet forms as specified in the project manual, but recommended in writing that the City award the contract to Caldwell anyway as "the lowest responsive and responsible bidder."

¶6. In a letter to the project engineer, Landmark's attorney opined that Caldwell did not comply with the bid specifications concerning the forms to be used, and therefore, the bid was not responsive. Upon written request by Landmark's president, Eric Lamon, the matter was added to the city council's agenda for the same time the contract award was to be considered. The city council members reviewed the correspondence before the meeting.

¶7. At the meeting, Landmark's president, Caldwell's president, the city public works director, and a representative of the project engineer all spoke to the city council. Lamon submitted that Landmark could have also reduced its costs if it had known it could take exceptions to the specifications. However, Lamon gave no specifics to expound upon or evidence to support this conclusion. The public works director stated that the structural strength of the water tank was not compromised by the different size forms and that the tank would still have to be constructed within the tolerances set forth in the specifications regardless of the size of the forms. The project engineer's representative testified that the deviation from the specifications did not involve time, price and changes in the work because there was still going to be a one million gallon tank that was not significantly altered. He also stated that Caldwell's forms would merely be a change to aesthetics, not to the structure of the tank.

¶8. The city council voted unanimously to accept Caldwell's bid and award it the contract. Landmark filed a notice of appeal and bill of exceptions with the circuit court which in turn affirmed the city council's contract award to Caldwell. Landmark timely appealed to this Court. The circuit court allowed Caldwell to intervene on appeal.

## DISCUSSION

**I. WHETHER THE CITY COUNCIL'S DECISION TO AWARD THE CONTRACT TO CALDWELL WAS ARBITRARY OR CAPRICIOUS AND WHETHER IT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

¶9. On appeal, Landmark argues that Caldwell unilaterally deviated from the established bid specifications by using four feet forms instead of six to twelve feet forms and thereby tainted the competitive public bidding process. Landmark asserts that Caldwell gained an unfair economic advantage in this deviation and that the city council's vote to award the contract to Caldwell was not based on substantial evidence. Landmark raised the issue in letters to the different parties and at the meeting before the city council.

¶10. The city council argues that the contract reserved for it the right to waive any "informalities" not affecting time, price or changes in the work, and that the deviations from the specifications were just that, informalities. At the hearing, the city council focused on and ruled on whether the deviation from the specifications was substantial so as to make Caldwell a nonresponsive bidder. It concluded that the deviation was not substantial, would not affect time or price and would not significantly affect the structure of the tank.

¶11. In considering this matter, we are reminded that we apply the same standard of review to a circuit court's review of a municipal authority's decision as we apply to administrative agencies and boards. *See Wilkinson County Bd. of Supervisors v. Quality Farms, Inc.*, 767 So.2d 1007, 1010 (Miss. 2000) (citing ***Barnes v. Bd. of Supervisors***, 553 So.2d 508, 511 (Miss.1989)). The reviewing court is to determine if the judgment of an administrative agency "(1) [w]as supported by substantial evidence; or (2) [w]as arbitrary or capricious; or (3) [w]as beyond the power of the lower authority to make; or (4) [v]iolated some statutory or constitutional right of the complaining party." URCCC 5.03. *See also **Quality Farms,*** 767 So.2d at 1010 (citing ***Bd. of Law Enforcement Officers Standards & Training v. Butler***, 672 So.2d 1196, 1199 (Miss. 1996)).

¶12. We have noted that

> [t]he purpose of provisions requiring that contracts with public authorities be let only after competitive bidding [is] to secure economy in the construction of public works and the expenditures of public funds for materials and supplies needed by public bodies; to protect the public from collusive contracts; to prevent favoritism, fraud, extravagance, and improvidence in the procurement of these things for the use of the state and its local self-governing subdivisions; and to promote actual, honest, and effective competition to the end that each proposal or bid received and considered for the construction of a public improvement, the supplying of materials for public use, etc., may be in competition with all other bids upon the same basis, so that all such public contracts may be secured at the lowest cost to taxpayers.

*Hemphill Constr. Co. v. City of Laurel*, 760 So.2d 720, 724 (Miss. 2000)(citations omitted). Further, we have strictly construed the procedural requirements for bidding on public contracts as set forth in Miss. Code Ann. § 31-3-21 (2000). *See City of Durant v. Laws Constr. Co.*, 721 So.2d 598 (Miss. 1998). We recognize the principles of strict construction stressed in ***City of Durant*** but note that it deals with a specific statute that is not at issue in the case sub judice.

¶13. After reviewing the record, we find that the city council specifically reserved the right to waive any informality not involving price, time, or changes in work and that the city council found Caldwell's deviation

to fall within the definition of informality as noted in the project manual. This is the information upon which the city council based its decision, and the record supports that decision.

¶14. At the meeting, Landmark's president testified that the deviations from the bid specifications could affect the bid price. However, no testimony or evidence was offered to support or rebut this contention. Also, Landmark did not offer any evidence to indicate specifically how the prices would be affected. There is nothing in the record before the city council that evinces an economic advantage Caldwell may have had over the other bidders. Moreover, there was testimony at the hearing that the use of different size forms is a mere construction technique or methodology and would not affect the structural integrity of the water tower. The public works director and the project engineer testified that the structural integrity would not be in danger. Also, the portion of the manual that mandates strict enforcement of the concrete and form work requirements specifically states that the purpose is "to ensure concrete of the highest practicable structural and architectural standards." The testimony offered at the meeting undeniably shows that the structure of the water tank will not be affected by the use of four feet forms as opposed to six to twelve feet forms.

¶15. Landmark did not rebut any of the testimony offered at the meeting. Further, Landmark admits in its brief that there was no evidence presented that Caldwell was at an economic advantage, and that Landmark and the other bidders were at an economic disadvantage. Landmark raised the issue; and therefore, the burden was on it to prove what it contested. The burden was not on Caldwell.

¶16. The city council discussed and heard testimony as to whether the use of different size forms was a material deviation and determined that it was a mere informality that did not affect price, time or a change in the work. The decision to award the contract to Caldwell was not arbitrary or capricious, and it was based on substantial evidence.

## II. WHETHER CALDWELL WAS THE LOWEST RESPONSIVE BIDDER.

¶17. Landmark urges this Court to find that since Caldwell deviated from the form specifications it was a nonresponsive bidder and not the lowest bidder. Therefore, Landmark argues, Caldwell should not have been considered for the award pursuant to Miss. Code Ann. § 31-7-13 (d)(i). The preceding discussion renders this assignment of error moot.

## CONCLUSION

¶18. We find no evidence in the record to support Landmark's contention that Caldwell compromised the bidding process in this case or that Caldwell was at an unfair economic advantage. We note that *Hemphill* and *City of Durant* are still alive and well, and our holding today does not contradict the holdings in those cases. Accordingly, we affirm the circuit court's judgment affirming the city council's award of the contract to Caldwell.

¶19. **AFFIRMED.**

> **SMITH, P.J., WALLER, COBB, DIAZ, CARLSON, AND GRAVES, JJ., CONCUR. PITTMAN, C.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**