MYERS, J.,
for the Court.
¶ 1. W & W Contractors, Inc. (W&W) appeals from an order of the Circuit Court of Tunica County, Mississippi which affirmed the decision of the Tunica County Airport Commission (Commission) to award a contract to Cobb Land Development (Cobb). On appeal, W&W asks this Court to reverse the order of the circuit court and void the contract between the Commission and Cobb and award W&W monetary damages of the difference between its bid and Cobb’s bid for the project. W&W raises three issues on appeal for this Court’s consideration.
ISSUES PRESENTED
I. Whether the Commission’s decision to award the bid to Cobb was arbitrary and capricious because the Commission completely disregarded contractual provisions governing the form and substance of responsive bids and authorized post bid modifications by Cobb?
II. Whether the Commission’s award to Cobb was an action beyond the agency’s scope or powers because it did not have legal authority to amend the contract after sealed bids were submitted?
III. Whether the Commission’s award of the contract to Cobb was contrary to Mississippi law because Cobb failed to possess a Certificate of Responsibility for one or more major classifications and therefore did not comply with regulations regarding certification?
STATEMENT OF FACTS
¶ 2. In August 2000, the Commission advertised for sealed bids in connection with a site preparation contract. W&W and Cobb along with eight other contractors submitted bids for the project. The last paragraph of the “Notice to Contractors” contained the following provision:
The award, if made, will be made to the party submitting the bid deemed most favorable to the TUNICA COUNTY AIRPORT COMMISSION at the time the conditions are stipulated. The TU-NICA COUNTY AIRPORT COMMISSION reserves the right to reject any and all bids and to waive any informalities or irregularities in the bids received.
¶ 3. On September 8, 2000, the Commission received bids. W&W submitted a bid that totaled $4,319,279.20. Cobb did not state a figure for the total base bid. After all bids were taken under advise *361 ment by the Commission, several problems arose with Cobb’s bid.
¶4. The first issue which arose concerned the unit price for fencing which was pay item #33 on the bid sheet. Cobb provided the price of “eight hundred seventy-five” written in words but had “8.75” written in numbers. The second issue concerned the Disadvantage Business Enterprise (DBE) Plan requirements of the Commission. Cobb failed to list qualified DBEs to perform 9.15% of the total project as required by Commission guidelines. Also, Cobb listed itself as a DBE when in fact it was not. On October 2, 2000, Cobb amended its bid materials and complied with the Commission’s requirements by submitting a list of certified DBEs it planned to use as subcontractors.
¶ 5. Due to the irregularities in Cobb’s bid, the Commission sought an opinion from the Attorney General. On October 6, 2000, the Attorney General issued his official opinion to the Commission which states in pertinent part: “However, if the Commission determines that Cobb’s actual intended bid is, in fact, evident on the face of the bid, and the Commission finds that any irregularity does not give Cobb an advantage over other bidders, then the Commission may waive the irregularity and accept the Cobb bid.” Considering the Attorney General’s opinion, on October 16, 2000, the Commission accepted Cobb’s bid and awarded it the contract. W & W appealed the decision of the Commission to the Circuit Court of Tunica County on October 24, 2000. A hearing was conducted on April 29, 2003, and the circuit court affirmed the decision of the Commission on July 28, 2003. W & W timely perfected its appeal to this Court following the order.
LEGAL ANALYSIS
¶ 6. W & W argues that the decision of the Commission should be reversed because the decision was arbitrary and capricious, and the Commission acted beyond its powers and violated statutory provisions and W & W’s rights. We apply the same standard of review to the decision of the-Commission as we apply to our review of administrative agency decisions. Falco Lime Inc. v. Mayor and Aldermen of the City of Vicksburg, 836 So.2d 711, 721 (¶ 42) (Miss.2002). We must uphold the decision unless it was “unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency’s scope or powers; or violated the constitutional or statutory rights of the aggrieved party.” Id. (quoting Bd. of Law Enforcement Officers Standards & Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996)).
I. WHETHER THE COMMISSION’S DECISION TO AWARD THE BID TO COBB WAS ARBITRARY AND CAPRICIOUS BECAUSE THE COMMISSION COMPLETELY DISREGARDED CONTRACTUAL PROVISIONS GOVERNING THE FORM AND SUBSTANCE OF RESPONSIVE BIDS AND AUTHORIZED POST BID MODIFICATIONS BY COBB?
¶ 7. As its first point of error, W & W cites two instances where the Commission allowed Cobb to modify its bid post submission, the unit price for fencing and the DBE requirement. As evinced from the bid sheet, Cobb did not submit a total base bid. The column was left blank. All other bidders included a total. There was also a discrepancy in Cobb’s bid concerning the unit price for security fencing. In words, Cobb provided the price as “eight hundred seventy-five” but in numbers Cobb provided “8.75.” The bidders were provided requirements of the project prior to bidding and one specification read, “Unit prices are lump sum prices provided in both words and figures. In case of discrepancy, the amount shown in words *362 shall govern.” W & W argues that using Cobb’s amounts as stated in words, Cobb’s total bid would have been- $7,223,827 and not the lowest bid.
¶ 8. Upon opening the bids, the Commission discovered the discrepancy in Cobb’s bid. ' Based on this, the Commission sought an opinion of the Attorney General on whether the' irregularity could be waived and the contract awarded to Cobb based on the bid. The Attorney General informed the Commission that if it determined that the actual intended bid was evident from the face of the document and that the irregularity did not give Cobb an advantage over other bidders, the Commission could waive the irregularity and accept Cobb’s bid. The Commission considered the opinion and compared Cobb’s figure to those submitted by other bidders. If the Commission interpreted the unit price in words, the price would be over $800 a foot more than any other bidder. The numerical value, however, placed Cobb in line with other bidders on the price for fencing.
¶ 9. The Commission waived the irregularity and interpreted Cobb’s unit price for fencing as $8.75 per foot. W & W labels this action by the Commission an erroneous post-submission modification. W & W cites the case of Hemphill v. City of Laurel, 760 So.2d 720 (Miss.2000), as authority on this point. The Commission distinguishes Hemphill and argues that it simply interpreted the bid in light of its most logical meaning and fulfilled its obligations to the taxpayers of Tunica County by awarding the contract to the lowest bidder.
¶ 10. • In Hemphill, the supreme court stated that the city had overstepped its authority by allowing a bidder to amend its bid causing an increase after the bids were open. The court stated, “Our -holding is that the relevant public bid laws do not allow a governing party to accept a bid price increase after sealed bids are opened except where the error and the intended correct bid are evidenced on the face of the bid document.” Hemphill, 760 So.2d at 724 (¶ 20). As the circuit court held, the facts of this case are, completely opposite of Hemphill. Here, the Commission was not allowing Cobb to amend or modify its unit pricing but rather was interpreting the correct price for the fencing. Also, the interpretation of numbers over words resulted in a decrease in bid amount, not an increase. The actions of the Commission were appropriate because the error and the correct bid amount were evidenced on the face of the bid document. Allowing Cobb’s unit price to be accepted as $8.75 per foot instead of $875 per foot did not give Cobb , a competitive advantage nor did it freeze out the other bidders as W & W suggests. It allowed the Commission to make a determination on the correct price for fencing per foot submitted in Cobb’s bid.
¶ 11. W & W also cites error with the Commission’s allowing Cobb to supplement its bid to include subcontractors in order to comply with Tunica County’s DBE program. In order to qualify for federal funding, Tunica County adopted a program that requires that a percentage of contracts be awarded to DBEs. The Commission’s minimum DBE requirement for the contract was 9.15% of the project work. W & W argues that Cobb’s initial bid was' false and misleading because Cobb listed itself as a qualified DBE firm and did not include DBE subcontractors. According to Mississippi Department of Transportation records, Cobb was not a qualified DBE at the time it submitted the bid.
¶ 12. Section 26.53 of the Commission’s DBE Plan is entitled Good Faith Efforts and outlines the requirements of the plan as meeting the goal or evidencing good *363 faith efforts to meet the goal. The plan contains the following provisions:
A. INFORMATION TO BE SUBMITTED
Each solicitation for which a contract goal has been established will require the bidders/offerors to submit the following information at the time of the bid:
1. The names and addresses of DBE firms that will participate in the contract;
2. A description of the work that each DBE will perform;
3. The dollar amount of the participation of each DBE firm participation;
4. Written and signed documentation of commitment to use a DBE subcontractor whose participation it submits to meet a contract goal;
5. Written and signed confirmation from the DBE that it is participating in the contract as provided in the prime contractor’s commitment; and
6. If the contract goal is not met, evidence of good faith efforts.
B. DEMONSTRATION OF GOOD FAITH EFFORTS
The obligation of the bidder/offeror is to make good faith efforts. The bidder/of-feror can demonstrate that it has been done so either by meeting the contract goal or documenting good faith efforts.
¶ 13. The site preparation contract that Cobb submitted initially included five subcontractors. A review of MDOT records indicates that two out of the five were qualified DBEs. Cobb submitted that it would meet the DBE requirements and later supplemented the listing with additional DBE firms who would complete the contract.
¶ 14. The decision of the Commission to allow Cobb to supplement its bid and provide additional information on DBE contractors was appropriate. The Commission found that this action would not adversely effect the other bidders. By realizing its error and supplementing its bid, Cobb was making a good faith effprt to comply with DBE requirements as promised in its site preparation contract. The decision of the Commission to award the bid to Cobb was not arbitrary or capricious.
II. WHETHER THE COMMISSION’S AWARD TO COBB WAS AN ACTION BEYOND THE AGENCY’S POWER BECAUSE IT DID NOT ■■■ HAVE LEGAL AUTHORITY TO ALLOW AN AMENDMENT AFTER SEALED BIDS WERE SUBMITTED?
¶'15. W & W argues that the Commission’s award to Cobb was an action beyond its power because the Commission did not have the legal authority to allow an amendment after sealed bids were submitted. W & W contends that nothing in the applicable statutes governing public project bidding authorizes a governing body to allow- amendments of a bid post opening. W & W does not indicate in its brief what amendment it finds as unsupported by law. The Commission’s action of interpreting the unit-price for the fence as $8.75 per foot was not an amendment to the bid but a waiver by the Commission of discrepancies in Cobb’s bid. This action was proper as the irregularity was evinced from the bid document and the waiver did not give Cobb a competitive advantage over the other .bidders.
' ¶ 16. Cobb was allowed to supplement its list of DBE subcontractors in order to comply with Commission requirements. Governing authorities have considerable discretion when awarding public contracts. Hemphill, 760 So.2d at 723 (ÍI13). The discretion exists only where it is supported by statute.' Id. The law regarding public contracts requires “competitive sealed bids.” “The purpose of the *364 law is to protect the public by promoting competition so as to prevent fraud, favoritism and the like.” Id. at 724 (¶ 16).
¶ 17. In Hemphill, the court held that the Commission could not accept amendments that would increase the bid price after sealed bids had been opened except where the error and the intended correct bid are evident on the face of the bid document. Id. at 724 (¶ 20). The supplement submitted by Cobb regarding the DBEs bore no relation to economic provisions in the bid such as price which could effect the competitiveness of sealed bids, an action that the court in Hemphill sought to alleviate. The Commission was not acting outside its powers by ensuring that Cobb was a responsible bidder and could comply with the 9.15 % DBE requirement.
III. WHETHER THE COMMISSION’S AWARD OF THE CONTRACT TO COBB WAS CONTRARY TO MISSISSIPPI LAW BECAUSE COBB FAILED TO POSSESS A CERTIFICATE OF RESPONSIBILITY FOR ONE OR MORE MAJOR CLASSIFICATIONS AND THEREFORE DID NOT COMPLY WITH REGULATIONS REGARDING CERTIFICATION?
¶ 18. Mississippi Code Annotated Section 31-3-15 (Rev.2000) states the following:
No contract for public or private projects shall be issued or awarded to any contractor who did not have a current certificate of responsibility issued by said board at the time of the submission of the bid, or a similar certificate issued by a similar board of another state which recognizes certificates issued by said board. Any contract issued or awarded in violation of this section shall be null and void.
¶ 19. Further, Section 31-3-21(1) (Rev. 2000) requires that all bids submitted must have the certificate of responsibility number appearing on the exterior of the bid envelope. Also, the statute makes it a misdemeanor for anyone to knowingly and willfully submit a bid for projects without holding a certificate of responsibility number. Miss.Code Ann. § 31-3-21(1) (Rev/ 2000).
¶ 20. W & W argues that Cobb did not have certificates of responsibility for the major classifications required for the performance of the contract. W & W distinguishes between “major” classifications and “special” classifications. Both parties agree that Cobb listed its certificate of responsibility number on the outside of its bid envelope. The Commission argues that it in good faith believed that Cobb possessed the requisite certificate to complete the project. Cobb’s envelope is not contained in the record for our review thus preventing this Court from considering the adequacy of Cobb’s certificates. Cobb submitted certificate numbers on its bid envelope but because the record does not contain adequate information on Cobb’s certificates submitted to the Commission on the project in question, this Court will not consider whether or not Cobb was qualified to perform project work.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY AFFIRMING THE DECISION OF THE TUNICA COUNTY AIRPORT COMMISSION IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., LEE, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING AND BARNES, JJ, NOT PARTICIPATING.