# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-IA-00881-SCT

*THE MISSISSIPPI STATE PORT AUTHORITY AT GULFPORT*

*v.*

*EUTAW CONSTRUCTION COMPANY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/22/2020 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER DANIEL MEYER |
| | DORSEY R. CARSON, JR. |
| | LOWRY CHRISTOPHER LOMAX |
| | M. BRANT PETTIS |
| | JAMES E. LAMBERT, III |
| | JAMES KENNETH WETZEL |
| | BEN H. STONE |
| | DOUGLAS T. MIRACLE |
| | MATTHEW WARD McDADE |
| | BRYAN CARL SAWYERS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | M. BRANT PETTIS |
| | BEN H. STONE |
| | MARK E. BOND |
| | JAMES E. LAMBERT, III |
| ATTORNEYS FOR APPELLEE: | DORSEY R. CARSON, JR. |
| | ERIC F. HATTEN |
| | LINDSAY K. ROBERTS |
| | KATHRYN P. GOFF |
| | KELLI M. SLATER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 06/09/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. This matter involves the award of a construction contract by the Mississippi State Port Authority at Gulfport (the MSPA) to the low-bidder, W.C. Fore Trucking, Inc. (Fore). Eutaw Construction Company, Inc. (Eutaw), another bidder, challenged that award, and the Circuit Court of the First Judicial District of Hinds County reversed the MSPA's decision to award the contract to Fore. The MSPA appealed. Finding error, this Court reverses and renders the decision of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2. The Mississippi Legislature created the MSPA as an agency responsible for the development and operation of the state port located in Gulfport, Mississippi. *See* Miss. Code Ann. § 59-5-1 through -69 (Rev. 2013). Following the aftermath of Hurricane Katrina and pursuant to its statutory responsibility, the MSPA undertook a massive restoration of the state port consisting of various construction projects. One of those projects was the West Pier +25 Fill-Phase 1, Project No. 005 (the Project), the construction project at issue here.[1]

¶3. The MSPA issued a bid solicitation for the Project on February 1, 2012. The deadline to submit a bid was 10:00 a.m. on March 2, 2012. On February 24, 2012, the MSPA issued Addendum No. 1 to the bid solicitation. This addendum doubled the quantity of riprap and aggregate base course for the purpose of constructing a temporary haul ramp for the Project. Additionally, Addendum No. 1 required bidders to submit bids on a revised bid form, which

---

[1] The initial purpose of the Project was to raise the elevation of the west pier at the state port to twenty-five feet above the mean sea level.

2

recognized the addendum's change to the bid solicitation.[2]

¶4. On March 6, 2012, the MSPA publically opened the bid envelopes submitted for the Project. Among the eleven bidders were Eutaw and Fore. Fore's bid was $19,956,587.98, which was the lowest bid. Eutaw submitted the second-lowest bid of $22,905,525. Unbeknownst to the other bidders, however, the MSPA wrote a letter to Fore on March 7, 2012, informing Fore of errors in its bid.

¶5. The errors identified by the MSPA in its March 7, 2012 letter are recited here verbatim:

1) The original Bid Form, instead of the amended Bid Form that was provided to the bidders, was used by Fore Trucking;

2) The calculations of the cost for certain line items in the Bid Form are incorrect; and

3) The sum of the line item amounts in the Bid Form is significantly less than the "TOTAL AMOUNT OF BASE BID" shown in the Bid Form.

In the letter, the MSPA recited the relevant rule from the Procurement Manual of the Mississippi Department of Finance and Administration, Rule 3.106.12.4, that governs the MSPA's evaluation and decision after the opening of sealed bids and the discovery of errors in a submitted bid but before the time of the award of the contract. Rule 3.106.12.4 provides as follows:

(1) Minor Informalities

---

[2] The original bid form required 2,200 square yards of riprap and 2,500 square yards of aggregate base course. The revised bid form, which incorporated Addendum No. 1, increased the bid solicitation requirements to 4,400 square yards of riprap and 5,000 square yards of aggregate base course.

Minor informalities are matters of form rather than substance evident from the bid document, or insignificant mistakes that can be waived or corrected without prejudice to other bidders; that is, the effect on price, quantity, quality, delivery, or contractual conditions is negligible. The Agency Procurement Officer shall waive such informalities or allow the bidder to correct them depending on which is in the best interest of the State. Examples include the failure of a bidder to:

(a) Return the number of signed bids required by the Invitation for Bids;

(b) Sign the bid, but only if the unsigned bid is accompanied by other material indicating the bidder's intent to be bound;

(c) Failure to submit literature or samples with bid provided that such literature or samples shall be received prior to any award being made; or

(d) Acknowledge receipt of an amendment to the Invitation for Bids, but only if:

(I) It is clear from the bid that the bidder received the amendment and intended to be bound by its terms; or

(ii) The amendment involved had a negligible effect on price, quantity, quality, or delivery.

(2) Mistakes Where Intended Correct Bid Is Evident

If the mistake and the intended correct bid are clearly evident on the bid document, the bid shall be corrected on the intended correct bid and may not be withdrawn. Examples of mistakes that may be clearly evident on the bid document are typographical errors, errors in extending unit prices, and mathematical errors.

(3) Mistakes Where Intended Correct Bid is Not Evident

A bidder may be permitted to withdraw a low bid if:

(a) A mistake is clearly evident on the bid document, but the intended correct bid is not similarly evident; or

4

> (b)    The bidder submits proof of evidentiary value which clearly and convincingly demonstrates that a mistake was made.

12 Miss. Admin. Code Pt. 6, R. 3.106.12.4 (adopted Jan. 1, 2018), Westlaw.

¶6.    As stated previously, the first error identified by the MSPA involved Fore's submitting its bid on the original bid form instead of the revised bid form as required by Addendum No. 1.  This error caused Fore's bid to include incorrect quantities for riprap and aggregate base course.[3]  Fore, however, affirmatively indicated in its bid that it received Addendum No. 1.  Specifically, Fore recognized the addendum by hand-writing "1" and "2/24/2012" in a specified blank on the bid form that asked for bidders to note any addenda that have been received by that bidder.  For this reason, the MSPA determined in its letter that "it is Fore Trucking's position that its item total amounts for Riprap and the Aggregate Base Course were based on the quantities specified in *the amended Bid Form* (4,400 SY and 5,000 SY, respectively)."  (Emphasis added.)  The MSPA determined that

> Based on this representation from Fore Trucking that it intended to bid $159,732.50 for 4,400 SY of Riprap and $35,000.00 for 5,000 SY of Aggregate Base Course, the MSPA finds under Rule 3.106.12.4(1) of the Procurement Manual that it is in the State's best interest to allow Fore Trucking to correct this informality by resubmitting its bid on the amended Bid Form.

The MSPA further decided that the correction of this error would not prejudice the other bidders.  The total bid for these items, $159,732.50 and $35,000, were the same on both the original and revised bid forms submitted by Fore.  Only the price per unit changed.

---

[3] *See* n.2

¶7.  The second error involved incorrect calculations of certain line item total costs.[4] Specifically, Fore incorrectly multiplied the quantity and the unit price of certain line items. In its letter, the MSPA determined these "mathematical errors to be either minor informalities that do not prejudice other bidders or mistakes where the intended correct bid is evident under Rule 3. 106.12.4(1) and (2) of the Procurement Manual." The MSPA decided that it was in the State's best interest to allow these errors to be corrected.

¶8.  The third error involved a discrepancy between the sum of the line item totals and the "total amount of base bid" that Fore expressed in its bid. Fore listed the "total amount of base bid" as $19,956,587.98. The sum of the line item totals, however, was $19,121,886.96.

---

[4] The following chart represents the incorrect calculation of certain line items, as submitted by Fore and then their proper calculation as indicated by the MSPA:

| Description | Approximate Quantity | Unit Price | Item Total | Proper Calculation |
|---|---|---|---|---|
| Erosion Control Blanket | 27,500 SY | $0.80 | $22,146.00 | $22,000.00 |
| Slope Drains | 16 units | $3,436.05 | $54,976.84 | $54,976.80 |
| Turbidity Barrier | 700 LF | $18.686 | $13,080.00 | $13,080.20 |
| Wattles | 1,000 LF | $4.85 | $4,853.56 | $4,850.00 |
| Vertical Drains | 15,652,000 LF | $0.383 | $6,000,000.00 | $5,994,716.00 |
| Temp. Chain Link Fence | 3,600 LF | $2.22 | $8,000.00 | $7,992.00 |
| Ag. Gypsum | 26 tons | $168.65 | $4,385.00 | $4,384.90 |
| Grassing | 2,200 MSF | $6.16 | $13,550.00 | $13,552.00 |

The original bid form and the revised bid form both provided that "[i]n the case of discrepancy between the sum of the items and the Total Amount of Bid, the sum of the items shall be considered to be the Total Amount of Bid." Based on that language, the MSPA determined that the "controlling total amount" of Fore's bid was $19,116,447.98, i.e., the sum of the line item totals ($19,121,886.96) less the overages resulting from the calculation errors addressed under the second error ($5,439.98). The MSPA further determined that the intended correct bid amount was not evident from the Bid submitted. Accordingly, the MSPA decided that it "will accept Fore Trucking's Bid of $19,116,44[7].98 or allow Fore Trucking to withdraw its Bid under the provisions of Rule 3.106.12.4(3) of the Procurement Manual."

¶9. On March 8, 2012, Fore sent a reply letter to the MSPA that acknowledged the errors it had made. Attached to Fore's reply letter was the revised bid form that included the pertinent corrections pursuant to the March 7, 2012 MSPA letter. This time, along with the other corrections, Fore listed the "total amount of base bid" as $19,116,447.98, as advised by the MSPA. The MSPA then declared Fore the lowest bidder and awarded it the Project contract.

¶10. On March 12, 2012, Eutaw formally submitted a bid protest to the MSPA that challenged the MSPA's decision to award the contract to Fore. In its bid protest, Eutaw indicated that it had "reason to believe" Fore was a nonresponsive bidder. The MSPA found Eutaw's bid protest without merit and issued a denial shortly after Eutaw submitted its bid protest. Eutaw filed a supplemental bid protest, but the MSPA did not respond. Eutaw then

7

appealed the MSPA's decision to the circuit court.[5]

¶11.  Eutaw's appeal to the circuit court began on April 24, 2012 when it filed its "Notice of Appeal and Bill of Exceptions."  The MSPA, on May 29, 2012, sought to dismiss this appeal by arguing that Eutaw could only proceed via writ of certiorari.  In response, Eutaw filed its original and amended petition for writ of certiorari in a new case.  Again, the MSPA filed a motion to dismiss and argued lack of jurisdiction.

¶12.  Eutaw moved to consolidate the two cases, and the circuit court consolidated them on November 20, 2012.  The circuit court heard oral arguments on February 21, 2013.  The MSPA filed a third motion to dismiss but withdrew that filing after the circuit court—on February 28, 2014—ultimately decided to grant Eutaw's amended petition for writ of certiorari and agreed to hear the merits of the case.

¶13.  After the parties briefed the matter and participated in oral argument, the circuit court entered an order and opinion on July 22, 2020.[6]  The circuit court found that the MSPA's decision to award the contract to Fore was arbitrary, capricious, and illegal because Fore's bid submission was not evident from the face of the bid, and the errors within the bid were not minor.  Specifically, the circuit court reasoned that because the MSPA sent a letter to

_____

[5] Before Eutaw appealed to the circuit court, it appealed its bid protest to the Public Procurement Review Board (PPRB).  In the interim, the Mississippi legislature passed and the governor signed House Bill 1091, which removed the MSPA and all its procurements from the purview of the PPRB.  H.B. 1091, Reg. Sess., 2012 Miss. Laws ch. 485.  In response, the PPRB notified Eutaw that it was withholding its ruling on the appeal and returned Eutaw's protest to the MSPA.

[6] The record provides no reason for the delay of time between when the circuit court decided to hear the case in 2014 and when it entered its order and opinion in 2020.

Fore requesting "clarification," the errors on Fore's bid could not have been evident on the face of the bid. The circuit court further opined that the MSPA should have instead corrected the bid itself if the MSPA had determined that the errors in Fore's bid were evident on its face. As the circuit court saw it, Fore's errors in its bid were not minor, since Fore's revised bid doubled the quantity of two line items, riprap and aggregate base course. Also, the circuit court determined that the MSPA improperly allowed Fore to alter its bid after bid opening. For these reasons, the circuit court reversed the decision of MSPA that awarded the Project contract to Fore.

¶14. Aggrieved, the MSPA sought an interlocutory appeal on August 12, 2020, which this Court granted on October 1, 2020.

### ISSUES PRESENTED

I. Whether Fore's bid irregularities were minor and evident on the face of the bid.

II. Whether the MSPA violated Mississippi law by allowing Fore to correct its bid after bid opening.

### STANDARD OF REVIEW

¶15. The standard of review this Court employs when reviewing an administrative agency's decision is to determine whether the judgment "(1) [w]as supported by substantial evidence; or (2) [w]as arbitrary or capricious; or (3) [w]as beyond the power of the lower authority to make; or (4) [v]iolated some statutory or constitutional right of the complaining party."

*Hill Bros. Const. & Eng'g Co. v. Miss. Transp. Comm'n*, 909 So. 2d 58, 64 (Miss. 2005) (alterations in original) (internal quotation marks omitted) (quoting *Landmark Structures, Inc. v. City Council of Meridian*, 826 So. 2d 746, 749 (Miss. 2002)). "A rebuttable

9

presumption exists in favor of the action of an administrative agency, and the burden of proof is on the party challenging an agency's action." *Id.* (citing *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (Miss. 2000)).

¶16.    We are not conducting a review de novo, nor are we reviewing this case under the abuse of discretion standard. We must decide whether the MSPA's award of the Project contract to Fore was arbitrary and capricious and supported by substantial evidence. *Hill Bros.*, 909 So. 2d at 64 (quoting *Landmark Structures*, 826 So. 2d at 749). As the appellate court, we may not reweigh the facts, nor may we substitute our judgment for that of the agency. *Miss. Pub. Serv. Comm'n v. Merchs. Truck Line, Inc.*, 598 So. 2d 778, 782 (Miss. 1992).

## DISCUSSION

¶17.    The circuit court reversed the decision of the MSPA awarding the Project contract to Fore. The MSPA appealed, raising the following issues to this Court: (1) whether Fore's bid irregularities were minor and evident on the face of the bid, and (2) whether the MSPA violated Mississippi law by allowing Fore to correct its bid after bid opening. After careful consideration, we reverse and render the judgment of the circuit court.

### I.    Whether Fore's bid irregularities were minor and evident on the face of the bid.

¶18.    The MSPA determined that Fore made the following three errors in its original bid submission: (1) Fore submitted its bid on the original bid form instead of the revised bid form as required by Addendum No. 1; (2) Fore incorrectly calculated certain line item total costs; and (3) Fore included a discrepancy between the sum of the line item totals and the "total

10

amount of base bid" that Fore expressed in its bid.  Ultimately, the MSPA determined that these errors could be corrected pursuant to Rule 3.106.12.4.  We will address each error and the MSPA's decision regarding each error below.

### A.	Fore's First Error Involving the Bid Form

¶19.	During the bid solicitation, the MSPA issued Addendum No. 1, which Fore received. Fore, however, neglected to submit its bid on the revised bid form that recognized the changes in quantity for riprap and aggregate base course, as required by Addendum No. 1. Instead, Fore submitted its bid on the original bid form.  In doing so, Fore placed a bid for 2,200 square yards of riprap at $72.60 per unit for a total of $159,720 and a bid for 2,500 square yards of aggregate base course at $14 per unit for a total of $35,000.[7]

¶20.	After the MSPA sent its March 7, 2012 letter informing Fore of this first error, Fore corrected and resubmitted its bid on the revised bid form that recognized the proper quantity for riprap and aggregate base course as required by Addendum No. 1.  Importantly, Fore's line item bid total for both riprap and aggregate base in the revised bid *remained the same* as what was given in the original bid.  The only change that occurred in the revised bid, relating to the additional riprap and aggregate base course, was the amount required and the unit price for each.  Specifically, when it resubmitted its bid, Fore placed a bid for 4,400 square yards of riprap at $36.30 per unit for a total of $159,720 and a bid for 5,000 square yards of aggregate base course at $7 per unit for a total of $35,000.

---

[7] In these bid forms, it appears the quantity is pre-written by the MSPA.  This makes the bid total for that line item determinative of the unit price that a bidder decides to offer, or vice versa.

¶21.   Pursuant to Rule 3.106.12.4(1), the MSPA determined that this error was minor and that it did not prejudice other bidders, and for those reasons, the MSPA allowed Fore to correct the error.  Specifically, the MSPA relied on the fact that Fore acknowledged that it had received Addendum No. 1 when Fore submitted its original bid.  Eutaw argues that this error is not minor, despite such acknowledgment, because it involved a change in price and quantity.

¶22.   One of the cases cited and relied on by both parties is *Hill Brothers Construction & Engineering Co. v. Mississippi Transportation Commission*, 909 So. 2d 58 (Miss. 2005). In *Hill Brothers*, an unsuccessful bidder on a highway construction project brought an action against the Mississippi Transportation Commission, arguing that the construction contract was wrongfully awarded to the successful bidder.  *Id.* at 59-60.  Specifically, the unsuccessful bidder insisted that because the successful bidder neglected to sign the acknowledgment of the receipt of an addendum, the successful bidder had been nonresponsive.  *Id.* at 63.  The unsuccessful bidder relied on "*Smith v. Holmes County*, 242 Miss. 750, 137 So. 2d 195 (1962), for the proposition that an unsigned bid may not be accepted."  *Hill Bros.,* 909 So. 2d at 68.  This Court disagreed and reasoned that the "[the unsuccessful bidder's] reliance on *Smith* is without merit and not supported by the facts sub judice.  The rule in *Smith* is inapplicable because there was clearly a signed bid by [the successful bidder] at the time the bids were opened."  *Id.*  (footnote omitted).

¶23.   Further, this Court held that the successful bidder's error of neglecting to sign the acknowledgment of the receipt of addendum was a mere "minor irregularity" that the

Mississippi Transportation Commission could waive. *Id.* at 70. The Court came to that conclusion because it reasoned that such an error "did not alter or destroy the competitive bidding process, did not affect the price, quality or quantity of its bid, did not give [the successful bidder] any economic advantage over other bidders, and there was no opportunity for fraud or favoritism[.]" *Id.* (citing *J.H. Parker Constr. Co. v. Bd. of Aldermen of Natchez*, 721 So. 2d, 671, 677 (Miss. Ct. App. 1998)). The Court continued by pointing out that the Mississippi Transportation Commission's waiver did not prejudice the rights of the public or the other bidders and that the Mississippi Transportation Commission "considered this matter seriously, made the appropriate findings, and acted within its discretion in accepting [the successful bidder's] bid." *Id.*

¶24. Here, when Fore submitted a bid on the wrong form, Fore's submission included the incorrect quantity for riprap and aggregate base course. Fore, however, acknowledged that it received Addendum No. 1 on the original bid that it first submitted.[8] Also, when Fore resubmitted its bid on the correct revised bid form with the correct quantity amounts, the bid for both riprap and aggregate base course remained the same as what was contained in Fore's original bid. The MSPA considered these facts to mean that "Fore Trucking intended to bid $159,732.50 for 4,400 SY of Riprap and $35,000.00 for 5,000 SY of Aggregate Base Course[.]" We agree with this interpretation because Fore's *bid* never changed. *See id.* n.5 ("The word 'bid' is defined as: '[a] submitted price at which one will perform work or supply

---

[8] Fore's acknowledgment of Addendum No. 1 is, itself, even supported by the additional fact that Fore recognized the addendum by *handwriting* "1" and "2/24/2012" in a specified blank on the bid form that asked for bidders to note any addenda that have been received by that bidder.

13

goods.'" (alteration in original) (quoting *Bid*, Black's Law Dictionary (7th ed. 2000))). Nothing about the MSPA's decision to allow Fore to resubmit its bid on the revised bid form changed the total price for either riprap or aggregate base course. This fact further supports the MSPA's determination that Fore always intended to submit its bid on the revised bid form. Therefore, the MSPA's decision to allow the error to be corrected did not affect the "price, quality or quantity of [the] bid[.]" *Id.* at 70. That decision was not arbitrary and capricious.

¶25. Further, "[m]inor informalities are matters of form rather than substance evident from the bid document, or insignificant mistakes that can be waived or corrected without prejudice to other bidders; that is, the effect on price, quantity, quality, delivery, or contractual conditions is negligible." 12 Miss. Admin. Code Pt. 6, R. 3.106.12.4(1). For the same reasons as stated above, we agree with the MSPA that, pursuant to Rule 3.106.12.4(1), Fore's first error is minor, and no prejudice occurred by allowing it to be corrected. Again, the decision to allow the correction was not arbitrary and capricious.

### B. Fore's Second Error Involving Line Item Calculations

¶26. The MSPA determined that Fore's second error involved incorrect calculations of line item totals. Clearly, the MSPA found that Fore incorrectly multiplied the quantity and the unit price of several line items. The MSPA found these "mathematical errors to be either minor informalities that do not prejudice other bidders or mistakes where the intended correct bid is evident under Rule 3.106.12.4(1) and (2) of the Procurement Manual." Again, Eutaw argues that such errors cannot be minor because they impact the bid price. Eutaw also argues

14

that these errors are not merely mistakes when the intended correct bid is still evident because the incorrect calculations made it impossible to discern the intended bid without clarification.

¶27.    As discussed above, Rule 3.106.12.4(1) defines minor errors as "matters of form rather than substance evident from the bid document." 12 Miss. Admin. Code Pt. 6, R. 3.106.12.4(1).   These errors have a mere "negligible" effect on price or quantity.  *Id.* Negligible means something that is "so small or unimportant or of so little consequence as to warrant little or no attention." *Negligible*, Merriam-Webster, https://www.merriam-webster.com/dictionary/negligible (last visited May 26, 2022).

¶28.    The MSPA determined that Fore's miscalculation errors were minor because the errors were discovered through a simple mathematical procedure.  In actual practice, no effect on the bid occurred because the quantity and unit price remained the same for each miscalculated line item once Fore resubmitted its bid correctly.  *See **Hill Bros.**,* 909 So. 2d at 70 (providing that minor errors are errors that do not affect "the price, quality or quantity of [the] bid[.]").   For that reason, we agree with the MSPA that such errors have a "negligible" effect and are minor.  12 Miss. Admin. Code Pt. 6, R. 3.106.12.4(1).  This determination was not arbitrary and capricious.

¶29.    The MSPA also determined that Fore's second error was one in which the intended bid was still evident.  Rule 3.106.12.4(2) provides that

> If the mistake and the intended correct bid are clearly evident on the bid document, the bid shall be corrected on the intended correct bid and may not be withdrawn. Examples of mistakes that may be clearly evident on the bid document are typographical errors, errors in extending unit prices, and

mathematical errors.

12 Miss. Admin. Code Pt. 6, R. 3.106.12.4(2).

¶30.    In *W & W Contractors, Inc. v. Tunica County Airport Commission*, 881 So. 2d 358, 360-61 (Miss. Ct. App. 2004), an unsuccessful bidder argued that the county airport commission wrongfully permitted the successful bidder to amend its bid to address an error. This error involved a discrepancy in the unit price per foot for a line item. *Id.* at 362. "In words, [the successful bidder] provided the price as 'eight hundred seventy-five' but in numbers [the successful bidder] provided '8.75.'" *Id.* The county airport commission waived the error and interpreted the successful bidder's unit price for that line item as $8.75 per foot. *Id.* The unsuccessful bidder argued that such action by the county airport commission constitutes "erroneous post-submission modification." *Id.* The county airport commission responded that it "simply interpreted the bid in the light of its most logical meaning and fulfilled its obligations to the taxpayers of Tunica County by awarding the contract to the lowest bidder." *Id.*

¶31.    The Court of Appeals did not agree with the unsuccessful bidder that "the Commission was . . . allowing [the successful bidder] to amend or modify its unit pricing[.]" *Id.* Instead, the Court of Appeals reasoned that the county airport commission "was *interpreting* the correct price for the [line item]." *Id.* (emphasis added). The Court of Appeals concluded, and we agree, that "[t]he actions of the Commission were appropriate because the error and the correct bid amount were *evidenced* on the face of the bid document." *Id.* (emphasis added).

16

¶32. Like the county airport commission in *W & W Contractors*, the MSPA determined that it could discern the error in Fore's bid and Fore's intended correct bid. *See id.* Even more favorable to Fore, pursuant to Rule 3.106.12.4(2), the MSPA determined that Fore's second error involved mere "mathematical errors" that could be corrected. 12 Miss. Admin. Code Pt. 6, R. 3.106.12.4(2). Fore simply miscalculated the total price for certain line items. Nothing about this error involved anything but simple, mathematical—specifically, multiplication—errors. For these reasons, we agree with the MSPA that, in light of these mathematical errors, Fore's intended correct bid was still evident. *See* 12 Miss. Admin. Code Pt. 6, R. 3.106.12.4(2). Such a determination was not arbitrary and capricious.

### C. Fore's Third Error Involving the Listed Total Bid

¶33. The third error identified by the MSPA involved a discrepancy between the sum of the line items in Fore's bid and the "total amount of base bid" listed in Fore's bid. The original bid form that Fore submitted its bid on provided that "[i]n case of discrepancy between the sum of the items and Total Amount of Bid, the sum of the items shall be considered to be the Total Amount of Bid." As mentioned previously, the MSPA gave Fore two options: either accept Fore's bid as the sum of the line items or allow Fore to withdraw its bid. The MSPA determined that it was acting pursuant to Rule 3.106.12.4(3). Fore ultimately corrected its bid by providing that the total amount of the bid was indeed the sum of the line items.

¶34. Regarding this third error, Eutaw argues "that MSPA [did] not follow the proper procedure set out by the Procurement Manual for such circumstances." We conclude that the

17

MSPA's decision regarding Fore's third error is not subject to reversal. The MSPA's analysis, however, is in need of slight correction.

¶35. The MSPA analyzed Fore's third error pursuant to Rule 3.106.12.4(3). That rule provides that "[a] bidder *may be permitted to withdraw* a low bid if: (a) A mistake is clearly evident on the bid document, *but the intended correct bid is not similarly evident* . . . ." 12 Miss. Admin. Code Pt. 6, R. 3.106.12.4(3). However, "[i]f the mistake and the intended correct bid *are* clearly evident on the bid document, the bid shall be corrected on the intended correct bid and *may not be withdrawn*." 12 Miss. Admin. Code Pt. 6, R. 3.106.12.4(2) (emphasis added).

¶36. We conclude that the intended correct bid was evident in light of the bid form's requirement that the sum of the line items controls. *See W & W Contractors*, 881 So. 2d at 362 (concluding that "[t]he actions of the Commission were appropriate because the error and *the correct bid amount were evidenced* on the face of the bid document." (emphasis added)). Like in *W & W Contractors*, the MSPA was merely "interpreting" Fore's bid. *Id.* Here, Fore, again, simply miscalculated: Fore miscalculated the total amount of the bid. Similar to the second error, however, nothing about this third error involves anything more than a simple, mathematical error, this time addition. Since the intended correct bid was evident, the MSPA should have analyzed Fore's third error under Rule 3.106.12.4(2). *See id.*

¶37. This correction is within the bounds of our above-stated standard of review. *See Hill Bros.*, 909 So. 2d at 64 (quoting *Landmark Structures*, 826 So. 2d at 749. We only correct

how the MSPA legally analyzed Fore's third error. As Fore did not ask to withdraw its bid, the distinction here is insignificant. The result—concluding that permitting Fore to correct its bid was proper—remains unchanged. The ultimate decision to permit Fore to correct its bid was not arbitrary and capricious.

## II. Whether the MSPA violated Mississippi law by allowing Fore to correct its bid after bid opening.

¶38. The circuit court also determined that the MSPA improperly allowed Fore to alter its bid after bid opening. The circuit court reasoned that Mississippi law does not allow a bidder to alter its bid after bid opening. In making this decision, the circuit court relied heavily on *Hemphill Construction Co. v. City of Laurel*, 760 So. 2d 720, 721-22 (Miss. 2000).

¶39. In *Hemphill*, a successful bidder was permitted to amend its bid after bid opening that "substantially *increase[d]* the bid price[.]" *Id.* at 724 (emphasis added). This Court reversed that decision and held that "the relevant public bid laws do not allow a governing authority to accept a bid price *increase* after sealed bids are opened, except where the error and the intended correct bid are evident on the face of the bid document." *Id.* (emphasis added).

¶40. Here, as stated above, the errors and the intended correct bid were evident on the face of Fore's original bid. Further, Fore's corrected bid was a *decrease* in price, not an increase. Fore's bid decreased from $19,956,587.98 to $19,116,447.98. At all times—including before and after Fore resubmitted its bid on the revised bid form—Fore was the low bidder in the MSPA's bid solicitation for the Project. Fore's corrections, which *lowered* the cost to taxpayers of what was already the lowest bid, is not what *Hemphill* is meant to protect against. For these reasons, we conclude that this case is unlike *Hemphill* and that the MSPA

19

did not violate public bid laws. *See id.* The circuit court's reliance on **Hemphill** is misguided. *Id.*

## CONCLUSION

¶41. Fore's errors involved instances in which the error was minor, and it and the intended correct bid were evident on the face of the bid. *See **Hill Bros.***, 909 So. 2d at 70; *see also **W & W Contractors***, 881 So. 2d at 362. Also, Fore's corrected bid was a decrease in price. *See **Hemphill***, 760 So. 2d at 724. For these reasons, the MSPA properly followed Rule 3.106.12.4 in allowing Fore to correct its bid. Its decision was not arbitrary and capricious. The record reflects that the MSPA clearly articulated Fore's errors, the rules that allowed for the correction of those errors, and the MSPA's reasons for allowing the corrections. Therefore, we reverse the circuit court's decision and render judgment in favor of the MSPA.

¶42. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**